UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ROSA GUAMAN,                                     :

                                                 :

                    Plaintiff,                   :          14 Civ. 8143 (GBD) (GWG)

                                                 :
        -against-                                          **AMENDED REPORT AND**
                                                 :        **RECOMMENDATION**
J&C TOP FASHION, INC. et al.,

                                                 :

                    Defendants.                  :
--------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        Plaintiff Rosa Guaman brought this action against defendants J & C Top Fashion, Inc.

("J&C") and Tommy Wong to recover unpaid wages and other damages arising out of the

defendants' violations of the New York Labor Law ("NYLL"), New York state labor

regulations, and the Fair Labor Standards Act ("FLSA").  A default has been entered against the

defendants.  The only remaining issue is the amount of damages Guaman is due.[1]

I.      BACKGROUND

        A.      Procedural Background

        Guaman filed a complaint on October 9, 2014.  Complaint, filed Oct. 9, 2014 (Docket #

1) ("Compl.").  Both defendants were served and failed to answer.  See Affidavit of Service,

filed Oct. 24, 2014 (Docket # 4); Affidavit of Service, filed Oct. 27, 2014 (Docket # 5).  The

Clerk of Court issued a certificate of default as to both defendants on March 5, 2015.  See

Certificate of Default, filed Mar. 5, 2015 (Docket # 12).  On May 12, 2015, Guaman filed a

_____

        [1]  The Court previously issued a Report and Recommendation dated January 29, 2016
(Docket # 27) that included a section awarding plaintiff "spread of hours" damages.  The
inclusion of such damages was error.  Accordingly, we have issued the instant Amended Report
and Recommendation, which is identical to the previous Report and Recommendation except
that it excludes such damages.

motion for default judgment against all defendants.  See Notice of Motion for Default Judgment, filed May 12, 2015 (Docket # 14).  On June 3, 2015, Judge George B. Daniels issued an order granting the motion but referring the matter to the undersigned for an inquest on damages, interest, attorneys' fees, costs, and disbursements.  See Order, filed June 3, 2015 (Docket # 19).

Because the default establishes defendants' liability, see, e.g., Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995), the only issue remaining is whether Guaman has supplied adequate proof of her damages.  See GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *2 (S.D.N.Y. July 20, 2009) ("A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, and the sole issue that remains before the court is whether the plaintiff has provided adequate support for the relief it seeks.") (citations omitted); accord Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  The Second Circuit has held that an inquest into damages may be held on the basis of documentary evidence alone, "as long as [the court has] ensured that there was a basis for the damages specified in [the] default judgment."  Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989); accord Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991), cert. denied, 503 U.S. 1006 (1992).  Plaintiff's submissions include affidavits and documentary evidence.[2]  As these submissions provide a

---

[2]  See Affirmation of Leonor H. Coyle, filed June 25, 2015 (Docket # 23) ("Coyle Aff."); NYS Department of State Entity Information Sheet for J & C Top Fashion, Inc., filed June 25, 2015 (annexed as Ex. A to Coyle Aff.) ("J&C Entity Information"); Manta Webpage for J & C Top Fashions, filed June 25, 2015 (annexed as Ex. B to Coyle Aff.) ("Manta Webpage"); Declaration of Rosa Guaman, filed June 25, 2015 (annexed as Ex. C to Coyle Aff.) ("Guaman Decl."); Virginia & Ambinder, LLP Inquest Damage Calculations, filed June 25, 2015 (annexed as Ex. D to Coyle Aff.) ("Damages Chart"); Virginia & Ambinder, LLP Invoice # 13120, filed June 25, 2015 (annexed as Ex. E to Coyle Aff.) ("V&A Invoice"); Proposed Findings of Fact

sufficient basis for an award of damages, no evidentiary hearing is required.  The finding of facts

herein are based on the allegations in the complaint regarding liability and the admissible

evidence regarding damages in plaintiff's submissions.

      B.    Facts Relating to Liability

In light of the defendants' default, this Court accepts as true the well-pleaded allegations

contained in Guaman's complaint, with the exception of those allegations relating to damages.

See, e.g., Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. LLC, 665 F.

Supp. 2d 434, 436 (S.D.N.Y. 2009) ("When the Court enters a default judgment, as regards

liability it must accept as true all of the factual allegations of the complaint, but the amount of

damages are not deemed true.  The Court must conduct an inquiry in order to ascertain the

amount of damages with reasonable certainty.") (citations, brackets, and internal quotation

marks omitted).

J&C is a New York State corporation operating in the garment industry and retail

business.  Compl. ¶ 7; J&C Entity Information.  J&C has an annual gross revenue of more than

$500,000 and produces goods for interstate commerce.  Compl. ¶ 24; Manta Webpage.  Plaintiff

Guaman was employed as "a sales assistant and shopkeeper's assistant" by J&C from

approximately February 2007 to September 13, 2014.  Compl. ¶ 13.  Defendant Tommy Wong

was the president and owner of J&C while Guaman worked there.  See id. ¶¶ 21-22.  Wong had

the power to hire and fire employees, controlled employee work schedules, determined the rate

and method of payment, and was responsible for maintaining employment records.  Id. ¶ 21.

---

and Conclusions of Law as to Defendants J&C Top Fashion, Inc. and Tommy Wong, filed June
25, 2015 (Docket # 22) ("Proposed Findings"); Virginia & Ambinder, LLP Invoice # 13212,
filed Nov. 17, 2015 (annexed as Ex. 1 to letter from Leonor H. Coyle, Esq. to Magistrate Judge
Gabriel W. Gorenstein, dated Nov. 17, 2015 (Docket # 26)) ("Revised V&A Invoice").

Guaman typically worked at J&C for six or seven days each week, starting at either 8:30 or 9:00 a.m. until 7:00 p.m.  Id. ¶ 4.  Guaman often worked more than 40 hours each week and more than 10 hours each day, but did not receive compensation beyond her ordinary rate of pay for these hours worked.  Id. ¶¶ 15-17.  Guaman was paid a flat hourly rate of between $7.25 and $9.50 per hour, for all hours worked each week.  Guaman Decl. ¶ 7.[3]  Guaman was paid in cash for her work and was never provided with a paystub.  Compl. ¶ 18; Guaman Decl. ¶ 10.

II.     DISCUSSION

    A.     Status of Defendants as Guaman's "Employers"

        1.     FLSA Standard

The FLSA imposes liability on an "employer" who violates the FLSA's minimum wage, overtime, and retaliation provisions.  See 29 U.S.C. §§ 216(b), (e)(2).  The FLSA defines "employer" as a person or other entity "acting directly or indirectly in the interest of an employer in relation to an employee."  Id. § 203 (a), (d).

The definition of "employ" under the FLSA "includes to suffer or permit to work."  Id. § 203(g).  An employment relationship exists under the FLSA when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citing cases).  A person or entity need not possess "formal control" over a worker to qualify as an employer; rather, the person or entity may simply exercise "functional control" over the worker in question.  Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003).

Factors relevant to determining control over a worker's employment include "whether

_____

[3] As described further below, there is a discrepancy between the complaint and Guaman's declaration concerning her hourly salary.

the alleged employer (1) had the power to hire and fire the employees, (2) supervised and

controlled employee work schedules or conditions of employment, (3) determined the rate and

method of payment, and (4) maintained employment records." Herman, 172 F.3d at 139

(quoting Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  "No one of the four

factors standing alone is dispositive." Id. (citing Brock v. Superior Care, Inc., 840 F.2d 1054,

1059 (2d Cir. 1988)).  The existence of all four indicia of employment "can be sufficient to

establish employer status." Zheng, 355 F.3d at 69 (emphasis omitted).  However, employer

status does not require the existence of all four, and a court should consider "any other factors it

deems relevant." Id. at 69, 71–72.

2.     NYLL Standard

The NYLL's definition of employment is nearly identical to the FLSA's.  Compare 29

U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."), with N.Y. Lab. Law § 2(7)

("'Employed' includes permitted or suffered to work."); see also Garcia v. La Revise Assocs.

LLC, 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011) ("New York's 'employer' provisions are

equally [as] broad [as the FLSA's].") (citing Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13

(S.D.N.Y. 2010)).  Thus, courts in this circuit "hold that the New York Labor Law embodies the

same standards for joint employment as the FLSA." Chen v. St. Beat Sportswear, Inc., 364 F.

Supp. 2d 269, 278 (E.D.N.Y. 2005) (citing cases); accord Garcia v. JonJon Deli Grocery Corp.,

2015 WL 4940107, at *3-4 (S.D.N.Y. Aug. 11, 2015) ("district courts in this Circuit have

consistently interpreted the definition of 'employer' under the New York Labor Law

coextensively with the definition used by the FLSA") (quoting Inclan v. N.Y. Hospitality Grp.,

Inc., 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015); Ansoumana v. Gristede's Operating Corp., 255

F. Supp. 2d 184, 189 (S.D.N.Y. 2003) ("Because New York Labor Law and the FLSA embody

5

similar standards," the court will "consider the federal law in deciding whether defendants were joint employers.") (citing cases).

       3.   <u>Status of J&C as an Employer</u>

Guaman alleges that she was employed by J&C from February 2007 until September 13, 2014.  Compl. ¶ 13; Guaman Decl. ¶ 2.  During her tenure with J&C, Guaman worked as a sales assistant and shopkeeper's assistant in furtherance of J&C's business and at J&C's direction.  <u>See</u> Guaman Decl. ¶ 4; Compl. ¶¶ 6-7.  J&C controlled Guaman's daily activities and payment by employing Tommy Wong, who it empowered with the ability to hire and fire individuals, control work schedules, determine rate of pay, and maintain employment records.  <u>See</u> Compl. ¶¶ 21-23; Guaman Decl. ¶¶ 12-14.  Accordingly, J&C held sufficient control over Guaman to qualify as Guaman's employer.

       4.   <u>Status of Tommy Wong as an Employer</u>

During the period in which Guaman worked at J&C, Tommy Wong was the "president and/or owner of J&C . . . dominated the day-to-day operating decisions of J&C, and made major personnel decisions for J&C."  Compl. ¶¶ 21-22.  Indeed, Guaman states that she was initially hired at J&C by Wong.  Guaman Decl. ¶ 12.  Furthermore, Guaman states that Wong gave her instructions and direction at work, decided her shift schedule, and paid her in cash each week.  Compl. ¶¶ 18, 21; Guaman Decl. ¶¶ 13-14.  Thus, Wong exercised sufficient control over Guaman's work to qualify as Guaman's employer.

    B.   <u>Overtime Wages</u>

       1.   <u>Statute of Limitations</u>

Under both the FLSA and NYLL, any employee who works more than 40 hours per week must be paid at a rate not less than 150% the employee's regular hourly rate for all hours beyond

40.  29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. Tit. 12 § 142–2.2.  The statute of

limitations to bring a FLSA claim is two years, while the statute of limitations under the NYLL

is six years.  29 U.S.C. § 255(a); N.Y. Lab. Law § 663(3).  Under the FLSA, however, when an

employer's violation of the Act is "willful," a three-year statute of limitation applies.  29 U.S.C.

255(a); accord Parada v. Banco Industrial De Venezuela, C.A., 753 F.3d 62, 70 (2d Cir. 2014)

(citations omitted); McLean v. Garage Mgmt. Corp., 2012 WL 1358739, at *7 (S.D.N.Y. Apr.

19, 2012).  "For an employer's actions to be willful, the employer must have "either [known] or

showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."

D'Arpa v. Runway Towing Corp., 2013 WL 3010810, at *4 (E.D.N.Y. June 18, 2013) (citing

McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).  It is settled that "[m]ere

negligence is insufficient," Young v. Cooper Cameron Corp., 586 F.3d 201, 207 (2d Cir. 2009),

and that "an employer may act unreasonably and yet not recklessly."  McLean, 2012 WL

1358739, at *7 (citing McLaughlin, 486 U.S. at 135 n.13).

　　　In the instant matter, Wong, as the president and owner of J&C held "complete control of

the alleged activities of J&C."  Compl. ¶ 23.  Wong personally paid Guaman each week, in cash,

never provided any written explanation of Guaman's wages, failed to provide overtime payments

for over seven years, and instituted a policy of underpayment at J&C.  Guaman Decl. ¶¶ 7-10,

13; Compl. ¶ 3.  The complaint contains an uncontroverted allegation that Wong and J&C

"willful[ly]" instituted a "policy and practice" of, inter alia, failing to provide paystubs, failing to

provide overtime pay, and failing to provide spread of hour pay when warranted under federal

and state law.  See Compl. ¶¶ 3-5, 33, 44, 49.  This is sufficient to conclude that the defendants

acted willfully.  See, e.g., Marshall v. UBS Fin. Servs. Inc., 2015 WL 4095232, at *4 (S.D.N.Y.

July 7, 2015) (on motion to dismiss, FLSA violations were "willful" where "[t]he Amended

Complaint allege[d] both that the defendant had a corporate policy of perpetrating wage violations, detail[ed] what the policy was, and allege[d] that the defendant's violations were willful."); Vinas v. Pullini Subsurface Contractors, Inc., 2012 WL 6641662, at *4 (E.D.N.Y. Oct. 5, 2012) (allegation in complaint that defendant's failure to properly compensate plaintiff for overtime was "willful" sufficient to apply the three-year statute of limitations) (citation omitted). Accordingly, we find that the defendants willfully violated the FLSA and that a three-year statute of limitations for the FLSA claims is warranted.

2. <u>Calculation of Damages</u>

Guaman worked at J&C from February 2007 until September 13, 2014. Guaman Decl. ¶ 2. Guaman filed her complaint in this matter on October 9, 2014. Accordingly, defendants are liable for any violations of the FLSA that occurred during the three years preceding that filing, from October 9, 2011, to October 9, 2014, and for any NYLL violations for the period October 9, 2008, through October 9, 2014. Because the actionable period of Guaman's FLSA and NYLL claims overlap, her "federal claim subsumes [her] state law claim for the overlapping damages period." Rios v. Neighborhood Const. Corp., 2009 WL 3335354, at *1 n.2 (S.D.N.Y. Oct. 14, 2009) (citing Khan v. IBI Armored Servs., Inc., 474 F. Supp. 2d 448, 450 n.1 (E.D.N.Y. 2007)). However, "[f]or the period that is untimely under the federal three-year statute of limitations but timely under the state law six-year statute of limitations, the state law claim is operative." Id. Thus, in this case defendants are liable under the NYLL for the period of October 9, 2008 to October 9, 2011, and under the FLSA for the period of October 10, 2011 to September 13, 2014.

Guaman worked from 8:30 AM until 7:00 PM each day, six to seven days per week. Guaman Decl. ¶¶ 5-6. Guaman worked at this pace throughout her time with the defendants and was paid at a rate of $7.25 to $9.50 per hour for all hours worked. Id. ¶ 7.

8

For the purposes of calculating damages, Guaman seeks to use an average pay rate of $8.75 per hour.  See Damages Chart.  This appears to represent the average of the pay rate Guaman alleged in her complaint.  See Compl. ¶ 17 (stating that Guaman was paid "between $8.50 and $9.00 for all hours worked.").  The average of the pay range that Guaman states in her sworn affidavit, however, is $8.38 (the rounded average of $7.25 and $9.50), not $8.75.  No explanation is given for why we should rely on the figures provided in the Complaint, as opposed to those in Guaman's sworn testimony.  Accordingly, we conclude that the rate of $8.38 is the appropriate rate to use.

As for the number of hours worked per week, in the complaint Guaman alleged that she worked "from approximately 8:30 a.m. or 9:00 a.m. until 7:00 p.m."  Compl. ¶ 14.  In her declaration, however, Guaman states that she worked from 8:30 a.m. until 7:00 p.m.  Guaman Decl. ¶ 5.  If we go by the complaint, she worked either 10 or 10.5 hours per day.  If we go by the declaration, she worked 10.5 hours per day.  In the Damages Chart, however, Guaman seeks only 10.25 hours.  Because this number is less than what would be justified by her sworn declaration, we will accept it.  Assuming she worked "six or seven" days a week regularly, the average number of hours per week is the average of 61.5 hours (10.25 X 6) and 71.75 hours (10.25 X 7) or 66.625 hours per week.  Rounded to nearest whole number, this is 67 hours per week. Accordingly, we will use 67 hours as the weekly hours figure.

At 67 hours per week, Guaman should have been paid at a rate of $12.57 ($8.38 x 1.5) for 27 hours per week (67 hours - 40 hours), equaling $339.39 per week in overtime pay due to her.   Instead, Guaman was paid at an average rate of $8.38 for each of those 27 hours, equaling only $226.26 per week.  Thus, for the 309 weeks Guaman worked for Defendants, within the statute of limitations for either the NYLL or the FLSA, she was underpaid $34,957.17 in

overtime payments ($113.13 [$339.39 - $226.26] X 309 weeks = $34,957.17).

C.    Spread of Hours Premium

Under the NYLL, an employee must "receive one hour's pay at the basic minimum

hourly wage rate" in addition to the regular minimum wage for each workday "in which . . . the

spread of hours exceeds 10 hours."  N.Y. Comp. Codes R. & Regs. Tit. 12, § 142–3.4(a).  "The

term 'spread of hours' is defined as 'the length of the interval between the beginning and end of

an employee's workday . . . includ[ing] working time plus time off for meals plus intervals off

duty."  Inclan v. N. Y. Hospitality Grp., Inc., 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015) (citing

N.Y. Comp. Codes R. & Regs. Tit. 12, § 146–1.6).  Guaman states in her declaration that her

regular work hours were 8:30 a.m. to 7:00 p.m., Guaman Decl. ¶ 5, which is 10.5 hours each

day.  She only seeks such pay for 3 days a week, however.  See Proposed Findings ¶ 65.

An award for "spread of hours" pay for non-restaurant or hotel workers, however, is

appropriate only when the employee is paid the minimum wage.  This issue was addressed

comprehensively in Williams v. Tri-State Biodiesel, L.L.C., 2015 WL 305362 (S.D.N.Y. Jan 23,

2015):

> As courts in this circuit have noted, the language [of N.Y. Comp. Codes R. &
> Regs. Tit. 12, § 142–2.4(a)] makes reference to payment only beyond "the
> minimum wage."  See, e.g., Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d
> 457, 474 (E.D.N.Y. 2011).  Moreover, the New York State Department of
> Labor — the agency that issued these regulations — has issued its own Opinion
> Letters "interpreting New York's spread of hours provision as applying only to
> employees earning minimum wage."  Malena v. Victoria's Secret Direct, LLC,
> 886 F. Supp. 2d 349, 369 (S.D.N.Y. 2012) (citing N.Y.S. Dep't of Labor 3/16/07
> Opinion Letter at 1, File No. RO–07–0009); accord Sosnowy, 764 F. Supp. 2d at
> 473.  Thus, recent case law has been nearly unanimous that the spread-of-hours
> requirement extends only to workers paid at the minimum-wage level.  See, e.g.,
> Juarez v. Precision Apparel, Inc., 2013 WL 5210142, at *12 (E.D.N.Y. Sept. 13,
> 2013); Malena, 886 F. Supp. 2d at 368-69; Zubair v. EnTech Eng'g P.C., 808 F.
> Supp. 2d 592, 601 (S.D.N.Y. 2011); Sosnowy, 764 F. Supp. 2d at 473-74;
> Espinosa v. Delgado Travel Agency, Inc., 2007 WL 656271, at *2 (S.D.N.Y.

Mar. 2, 2007), <u>partially reconsidered by</u> 2007 WL 1222858 (S.D.N.Y. Apr. 24, 2007).  It appears that the only courts that have concluded otherwise have relied on the case of <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 339-40 (S.D.N.Y. 2005).  But the defendants in that case did "not offer any argument that the regulation's language itself dictates" that it be limited to workers earning the minimum wage, <u>id.</u> at 340, and the case has been repeatedly criticized, <u>see</u>, <u>e.g.</u>, <u>Guadalupe v. Tri-State Emp't, Mgmt. & Consulting, Inc.</u>, 2013 WL 4547242, at *12-13 (E.D.N.Y. Aug 28, 2013) (citing cases); <u>Roach v. T.L. Cannon Corp.</u>, 889 F. Supp. 2d 364, 367-68 (N.D.N.Y. 2012) (citing cases).

Plaintiffs argue that §142-2.4 applies to employees earning above the minimum wage because the regulation "does not make reference to the fact the employee must be paid at or below the minimum wage."  Pl. Mem. at 34.  However, if the New York State Department of Labor had intended the statute to apply to all wage earners, "it would not have referenced the minimum wage or easily could have included language stating that the provision applied to all wage earners." <u>Ellis v. Common Wealth Worldwide Chaueffuered Transp. of NY, LLC</u>, 2012 WL 1004848, at *8 (E.D.N.Y. Mar. 23, 2012).  Moreover, the language of § 142-2.4 differs from § 146-1.6, which is a similar spread-of-hours provision that applies to employees of restaurants and all-year hotels, because § 146-1.6 explicitly extends to "all employees . . . regardless of a given employee's regular rate of pay."  12 N.Y.C.R.R. § 146-1.6(d).  That the New York State Department of Labor did not include similar express language in § 142-2.4 is indicative that it did not intend the regulation to apply to all wage earners.  Thus, we are persuaded that the "explicit reference to 'minimum wage' in § 142-2.4 indicates that such a provision is properly limited to those employees who receive only the minimum compensation required by law."  <u>Zubair</u>, 808 F. Supp. 2d at 601.

<u>Id.</u> at *16-17.

Here, Guaman contends that she was employed by the defendants from February 2007 until September 13, 2014 and "was paid between $7.25 and $9.50 per hour, for all hours worked, for the length of [her] employment."  Guaman Decl. ¶¶ 2,7.  New York's statutory minimum wage during this period was $7.15 per hour from January 1, 2007 to July 23, 2009, $7.25 per hour from July 24, 2009 to December 30, 2013, and $8.00 per hour from December 31, 2013 to December 30, 2014.  N.Y. Comp. Codes R. & Regs. Tit. 12, § 142–3.1(a).  Because Guaman does not provide any clear evidence that she was paid the minimum wage during this period, she is not entitled to an award for "spread of hours" pay.

D.     Failure to Provide Paystubs

Since April 9, 2011, the New York Labor Law has required employers to "furnish each employee with a statement with every payment of wages," which include, inter alia, the rate of payment, the gross wages provided, and the applicable overtime rate.  N.Y. Lab. Law § 195(3). Guaman was never provided a single wage statement throughout her employment, Guaman Decl. ¶ 10, which includes the 179 week period from April 2011 until September 2014.

Prior to February 27, 2015, statutory damages for violating this provision were limited to $100 per work week, not to exceed $2,500.  See 2010 N.Y. Laws ch. 564 § 7; accord Baltierra v. Advantage Pest Control Co., 2015 WL 5474093, at *10 (S.D.N.Y. Sept. 18, 2015).  Since that date, the statute was amended to allow a penalty of $250 for each work day that the violations occurred not to exceed $5,000.  See N.Y. Labor Law § 198(1–d).  Guaman seeks only the penalty under the law in existence at the time she was working.  See Proposed Findings ¶ 66. Thus, she is entitled to an additional $2,500 in statutory damages.[4]

E.     Liquidated Damages

Guaman is entitled to a total of $37,457.17 ($34,957.17 in unpaid overtime plus $2,500 in statutory damages) in combined damages under her NYLL and FLSA claims.  Guaman has requested liquidated damages under either the NYLL or the FLSA for the period of October 9, 2008 until September 13, 2014.  Proposed Findings ¶¶ 67-68; see also Damages Chart.  Guaman has not requested overlapping liquidated damages for the periods of time in which both her

---

[4]  Plaintiff has not sought statutory damages under N.Y. Labor Law § 195(1)(a) (eff. April 9, 2011 to Dec. 28, 2014), which required employers to provide wage notices "on or before February first of each subsequent year of the employee's employment with the employer."  Id.

FLSA and NYLL claims were active.[5]  Rather, she has requested liquidated damages under the NYLL in the amount of 25% of wages due for the 130-week period of October 9, 2008 to April 8, 2011, and in the amount of 100% of wages due for the 26-week period of April 9, 2011 until October 9, 2011.  Under the FLSA, she requests liquidated damages equal to 100% of wages due for the 153-week period of October 10, 2011, until September 13, 2014.  See Damages Chart.

These requests are proper.  Prior to November 24, 2009, NYLL plaintiffs were entitled to recover liquidated damages under the NYLL equal to 25% of unpaid wages where, as here, a plaintiff has shown that her employer's NYLL violations were "willful."  McLean, 2012 WL 1358739, at *8 (citing Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011)).  Effective November 24, 2009, the NYLL was amended to "shift[] the burden to the employer to show a good faith basis that it complied with the NYLL" in order to defeat a claim for liquidated damages.  Id.; N.Y. Lab. Law § 198(1–a).  As addressed above, the allegations in the complaint are sufficient to meet the "willful" standard under the FLSA and the standard is essentially the same under the NYLL.  See Kuebel, 643 F.3d at 366 (2d Cir. 2011);  Inclan v. New York Hosp. Grp., Inc., 95 F. Supp. 3d 490, 504-05 (S.D.N.Y. 2015); Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 937 (S.D.N.Y. 2013).  Obviously, defendants have made no showing of "good faith."

The liquidated damages amount in the NYLL was raised from 25% to 100% as of April 9, 2011.  See Inclan, 95 F. Supp. 3d at 505 (citing 2010 N.Y. Laws ch. 564 §§ 7, 16).  Thus, for her time working for defendants during the period of October 9, 2008 until April 8, 2011,

---

[5]  District courts are divided on whether such damages are available.  See, e.g., Santana v. Brown, 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015) (citing cases).  Because Guaman has not requested overlapping damages, we do not address the issue.

Guaman is entitled to 25% liquidated damages or $3,676.73 ($4.19 unpaid overtime per hour X 27 hours of overtime per week X 130 weeks X .25).  For the period of April 9, 2011 to October 9, 2011, Guaman is entitled to 100% liquidated damages or $2,941.38 ($4.19 unpaid overtime per hour X 27 hours of overtime per week X 26 weeks).  The total for liquidated damages under the NYLL is $6,618.11.

As noted, Guaman seeks liquidated damages under the FLSA equal to 100% of wages due for the 153-week period of October 10, 2011, until September 13, 2014.  "An employer who violates the minimum wage and overtime provisions of the FLSA is presumptively liable to the affected employees, in addition to back-pay, for 100% of the unpaid wages as liquidated damages."  Paz v. Piedra, 2012 WL 121103, at *11 (S.D.N.Y. Jan 12, 2012) (citing 29 U.S.C. § 216(b)).  However, an employer may overcome this presumption through a showing that any FLSA violation was committed in good faith, and with a reasonable belief that the acts were not in violation of the FLSA.  29 U.S.C. § 260; see also Kim v. 511 E. 5th Street, LLC, 2015 WL 5732079, at *10 (S.D.N.Y. Sept. 30, 2015) (citing Barfield v. New York City Health & Hosp. Corp., 537 F.3d 132, 150 (2d Cir. 2008)).  Because defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award.  Thus, Guaman is entitled to liquidated damages on her FLSA claim in the amount of $17,308.89 ($4.19 unpaid overtime per hour X 27 hours of overtime per week X 153 weeks).

F.    Attorney's Fees

Because she has made successful claims under the NYLL and FLSA, plaintiff is entitled to a further award of reasonable attorney's fees.  29 U.S.C. § 216(b); N.Y. Labor Law § 663(1); accord Baltierra v. Advantage Pest Control Co., 2015 WL 5474093, at *12 (S.D.N.Y. Sept. 18, 2015) (citing Young v. Cooper Cameron Corp., 586 F.3d 201, 208 (2d Cir. 2009)).  In

14

determining this fee award, "[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 186 (2d Cir. 2008); accord Stanczyk v. City of New York, 752 F.3d 273, 284 (2d Cir. 2014).  This calculation yields a "presumptively reasonable fee," Jimenez v. KLB Foods, Inc., 2015 WL 3947273, at *1 (S.D.N.Y. June 29, 2015), and is generally referred to as the "lodestar figure." Id. (citation omitted).  Although district courts remain free to modify this award to ensure that it represents a reasonable fee and incorporates important or unique aspects of the case, see, e.g., Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992), the lodestar figure "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." Perdue v. Kenny ex rel. Winn, 559 U.S. 542, 543 (2010) (citation and internal quotation marks omitted).

    1. Reasonable Hours

   It is well established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); accord Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 149-50 (2d Cir. 2014).  Here, plaintiff's counsel has submitted a summary of contemporaneous time records which describe the type of work performed, who performed this work, the amount of time spent working, the rate charged, the date on which the work occurred, and a total amount billed for each piece of the work performed in the instant matter.  See V&A Invoice.  With regard to the review of such records, a court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday

v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  The critical inquiry is "whether, at the time

the work was performed, a reasonable attorney would have engaged in similar time

expenditures."  Angamarca v. Pita Grill 7 Inc., 2012 WL 3578781, at *12 (S.D.N.Y. Aug. 2,

2012) (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted), cert. denied,

506 U.S. 1053 (1993).  In addressing this question, courts should not, however, engage in "an ex

post facto determination of whether attorney hours were necessary to the relief obtained."  Grant,

973 F.2d at 99.

Additionally, if a court finds that claimed hours are "excessive, redundant, or otherwise

unnecessary," it should exclude those hours from its calculation of the presumptively reasonable

fee.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); accord Quaratino v. Tiffany & Co., 166

F.3d 422, 426 n.6 (2d Cir. 1999) (citations omitted); Farmer v. Hyde Your Eyes Optical, Inc.,

2015 WL 2250592, at *15 (S.D.N.Y. May 13, 2015).  However, as the Supreme Court noted in

Hensley, "[t]here is no precise rule or formula for making these determinations."  461 U.S. at

436.  Because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an

application," Carey, 711 F.2d at 1146, "the court has discretion simply to deduct a reasonable

percentage of the number of hours claimed 'as a practical means of trimming fat from a fee

application,'" Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711

F.2d at 1146).  Thus, a district court is not required to "set forth item-by-item findings

concerning what may be countless objections to individual billing items." Lunday v. City of

Albany, 42 F.3d 131, 134 (2d Cir. 1994).

Here, the time logs submitted by plaintiff's counsel reflect that there are three attorneys

who worked on this case: Leonor Coyle, Alison Genova and Grisell Hernandez.[6]  Together, they expended 33.77 hours.  See Revised V&A Invoice; Proposed Findings ¶ 72.  In addition, nine different paralegals spent a total of 33.57 hours.  See Revised V&A Invoice.  This amounts to a total of 67.34 hours spent litigating this case.  This is an unusually high number of hours for work on a case that involved merely the drafting of a complaint and an application for a default judgment.  The time records do not reflect time spent on an investigation, attendance at court conferences, or any other unusual factors.  Cases in similar postures have awarded far fewer hours.  See, e.g., Greathouse v. JHS Sec., Inc., 2012 WL 3871523, at *12 (S.D.N.Y. Sept. 7, 2012) (awarding 24.2 hours in a default matter); Zhen Ming Chen v. New Fresco Tortillas Taco LLC, 2015 WL 5710320, at *10 (S.D.N.Y. Sept. 25, 2015) (reducing counsel's requested 29.3 hours by 10%); Galeana v. Lemongrass on Broadway Corp., 2014 WL 1364493, at *14-15 (S.D.N.Y. Apr. 4, 2014) (finding 32.7 hours "modest" and "reasonable to accomplish what needed to be done to achieve success for their clients" in a similar FLSA and NYLL default case); Santillan v. Henao, 822 F. Supp. 2d 284, 300 (E.D.N.Y. 2011) (awarding 25.2 hours in fees for a similar default matter).

Accordingly, the Court will impose an across-the-board cut of 50% to arrive at a total number of hours of 33.71, as reflected in the chart below.

   2. Reasonable Hourly Rate

Arbor Hill made clear that a "reasonable" hourly rate is "what a reasonable, paying client would be willing to pay."  522 F.3d at 184; accord Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 289 (2d Cir. 2011).  Thus, "the district court

---

   [6]  The time records reflect an entry of .6 hours for a Maria Tokarz.  We do not consider these hours, however, because plaintiff provides no background information about this person.

(unfortunately) bears the burden of disciplining the market, stepping into the shoes of the reasonable, paying client, who wishes to pay <u>the least amount necessary to litigate the case effectively</u>."  <u>Arbor Hill</u>, 522 F.3d at 184 (emphasis added).  In addition, the rate to be set for the plaintiff's attorneys must be "'in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  <u>Reiter v. MTA N.Y.C. Transit Auth.</u>, 457 F.3d 224, 232 (2d Cir. 2006) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)) (brackets omitted), <u>cert. denied</u>, 549 U.S. 1211 (2007).

To determine an appropriate hourly rate, <u>Arbor Hill</u> directs that a court should engage in the following process:

> [T]he district court, in exercising its considerable discretion, [is] to bear in mind <u>all</u> of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the <u>Johnson</u> factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.  The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.  The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

522 F.3d at 190 (emphasis in original).[7]  <u>Arbor Hill</u> specifically identified the following factors

---

[7]  The "<u>Johnson</u> factors" are those laid out in the case of <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974).  These are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the

to be considered in determining what a reasonable, paying client would be willing to pay:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Id. at 184.

The fee applicant bears the burden of establishing the reasonableness of the hourly rates requested.  Blum, 465 U.S. at 895 n.11.  The applicant must produce satisfactory evidence that the requested rates are in line with those prevailing in the community.  Id.; see also Bravia Capital Partners, Inc. v. Fike, 296 F.R.D. 136, 143 (S.D.N.Y. 2013).

In considering the appropriate rate, this Court will also rely on its own knowledge of the rates charged by practitioners.  See McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 (2d Cir. 2006) ("A district court may also use its knowledge of the relevant market when determining the reasonable hourly rate.") (citing Miele v. N.Y. State Teamsters Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)); Farbotko v. Clinton County, 433 F.3d 204, 209 (2d Cir. 2005) (court may consider its "own familiarity with the rates prevailing in the district").  This Court's knowledge derives largely from the Court's participation in settlement conferences, in which the Court, in its private discussions, often asks attorneys to reveal their hourly rates.

---

professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-19).

Here, in addition to the V&A Invoice, plaintiff counsel has submitted statements attesting to the backgrounds of counsel and some of the paralegals' experience.  See Proposed Findings ¶¶ 73-81.  The Court has considered all of the factors in Johnson and Arbor Hill and notes that this case was not unusually complex; that it did not demand great resources; that it involved no contested litigation; and that there were no particular timing demands on the case.  On the other hand, counsel and her firm practice extensively in the field of labor and employment law, specializing in wage and hour cases.  See Proposed Findings ¶¶ 70-73.

We find that the following rates are appropriate, keeping in mind that we must award rates based on "the least amount necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 184; see also id. (court must "enforce market discipline, approximating the negotiation that might ensue were the client actually required to pay the attorney's fees").  We note that, at the time of filing, Ms. Coyle had less than 9 years of practice.  Proposed Findings ¶ 73.  Ms. Genova and Ms. Hernandez completed law school only recently, in 2013 and 2014 respectively.  Id. ¶¶ 74-75.  We follow case law in awarding Ms. Coyle $275.00, see Cardoza v. Mango King Farmers Market Corp., 2015 WL 5561033, at *15 (E.D.N.Y. Sept. 1, 2015) (awarding Ms. Coyle $275 per hour in a similar default case); Gonzales v. Gan Israel Pre-School, 2014 WL 1011070, at *19 (E.D.N.Y. Mar. 14, 2014) (same), and the junior attorneys $175.00, see, e.g., Baltierra, 2015 WL 5474093, at *13 ("Reasonable hourly rates for junior associates . . . typically are between $150 and $200 per hour."); Trustees of New York City Dist. Council of Carpenters Pension Fund v. Richie Jordan Constr. Inc., 2015 WL 7288654, at *5 (S.D.N.Y. Nov. 17, 2015) (hourly rate of $175 is "in line with approved rates for junior associates in this District").

The paralegal time should be compensated at the rate of $75.00 per hour.  See Cuevas v. Ruby Enterprises of New York Inc., 2013 WL 3057715, at *2 (E.D.N.Y. June 17, 2013) ("courts

20

in this Circuit have generally found $75 an hour to be reasonable" for paralegals); accord
Alvarez v. 215 North Ave. Corp., 2015 WL 3855285, at *8 (S.D.N.Y. June 19, 2015) (finding a
rate of $75 per hour reasonable for bilingual paralegals who were required to use their Spanish-
speaking skills in the case); Santos v. EL Tepeyac Butcher Shop Inc., 2015 WL 9077172, at *2
(S.D.N.Y. Dec. 15, 2015) (awarding $75).

      The hours and rates described above produces an award of $5,762.25 as described in the
following table:

| Name | Hours Requested | Hours Awarded | Rate Awarded | Amount Awarded |
|------|-----------------|---------------|--------------|----------------|
| Grisell Hernandez | 1.27 | .64 | $175.00 | $   112.00 |
| Leonor Coyle | 30.90 | 15.45 | 275.00 | 4,248.75 |
| Alison Genova | 1.60 | .80 | 175.00 | 140.00 |
| Paralegals | 33.64 | 16.82 | 75.00 | 1,261.50 |
| Total Award | | | | 5,762.25 |

### G.  Costs

      The FLSA and NYLL also provide that a successful plaintiff may be entitled to costs,
which "'include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily
charged to their clients.'"  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998)
(quoting U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989));
accord Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012).
Here, Plaintiff's counsel has requested $125.23 in costs, consisting of $4.03 in legal research
fees, $120.50 in service of process fees, and $0.70 in PACER fees.  See V&A Invoice at 4.

These costs are recoverable.  See, e.g., Gesualdi v. Deland Contracting, Inc., 2014 WL 4659281, at *5 (E.D.N.Y. Sept. 17, 2014) (awarding costs for PACER fees and service of process); Guallpa v. N.Y. Pro Signs Inc., 2014 WL 2200393, at *12 (S.D.N.Y. May 27, 2014) (legal research fees).

### III.   TOTAL OF SUMS AWARDED

Guaman is entitled to a judgment in amount of $67,271.65.  This consists of: (1) $34,957.17 in unpaid overtime wages; (2) $2,500 in statutory damages for defendants' failure to provide pay stubs; (3) $6,618.11 in liquidated damages under the NYLL; (4) $17,308.89 in liquidated damages under the FLSA; and (5) $5,887.48 in attorney's fees and costs.[8]

Joint and several liability is appropriate based on the findings above that both defendants were Guaman's employer and therefore responsible for the acts giving rise to liability.  See, e.g., Zhen Ming Chen, 2015 WL 5710320, at *11 (citing cases).

### IV.   CONCLUSION

Judgement should be awarded in favor of Guaman and against defendants J&C and Tommy Wong, jointly and severally, in the amount of $67,271.65.

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of

---

[8]  Plaintiff mentions in passing that she seeks interest, Proposed Findings, ¶¶ 19, 63, but did not provide any authorities or explanation for this request.  Accordingly, no award for prejudgment interest is warranted.  Post-judgment interest "accrues automatically by operation of law, see 28 U.S.C. § 1961(a), and thus it is not necessary to make reference to it in the judgment."  GATX Corp. v. Aero Jet Corp., 2014 WL 3585887, at *6 (S.D.N.Y. July 22, 2014) (citation omitted).

this Report and Recommendation to serve and file any objections. <u>See</u> <u>also</u> Fed. R. Civ. P. 6(a),

(b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. George B. Daniels at 500 Pearl Street, New York, New York

10007. Any request for an extension of time to file objections must be directed to Judge Daniels.

If a party fails to file timely objections, that party will not be permitted to raise any objections to

this Report and Recommendation on appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner</u>

<u>& Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84,

92 (2d Cir. 2010).

Dated: February 22, 2016
     New York, New York

                                          GABRIEL W. GORENSTEIN
                                          United States Magistrate Judge

Copy sent to:

Tommy Wong
 J & C Top Fashion, Inc.
257 W 39th Street, 13th Floor
New York, NY 10018

23